# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PHILLIP L. NEAR,                              )
                                              )
        Plaintiff,                              )
                                              )
     v.                              )      Case No. 09-2233-JWL
                                              )
FRANK CRIVELLO; TITAN GLOBAL             )
HOLDINGS, INC.; DAVID MARKS;             )
BRYAN CHANCE; GREYSTONE                  )
BUSINESS CREDIT, LLC; and                )
GOLDBERG KOHN BELL BLACK                 )
ROSENBLOOM & MORITZ, LTD.,               )
                                              )
        Defendants.                              )
                                              )
_____)

## MEMORANDUM AND ORDER

Plaintiff Phillip Near brings this diversity action alleging state-law claims against Titan Global Holdings, Inc. ("Titan") and three individuals associated with Titan, Frank Crivello, David Marks, and Bryan Chance (collectively, "the Titan defendants"); Greystone Business Credit, LLC ("Greystone"); and Goldberg Kohn Bell Black Rosenbloom & Moritz, Ltd. ("Goldberg Kohn"). The case revolves around Titan's agreement to purchase Crescent Fuels, Inc. ("Crescent"), a fuel distributor located in Kansas, from plaintiff. Greystone was involved as a potential lender for the transaction, and Goldberg Kohn, a Chicago law firm, acted as Greystone's counsel. Plaintiff asserts a claim against Titan for breach of contract, and claims against the Titan defendants for

fraudulent misrepresentation, fraud by silence, fraudulent inducement, and negligent misrepresentation. Plaintiff also asserts claims against all defendants for conversion and for conspiracy to effect a conversion, and against Goldberg Kohn for breach of fiduciary duty, all stemming from plaintiff's allegation that Goldberg Kohn refused to return to plaintiff a stock certificate issued by Crescent to Titan. Titan asserts counterclaims against plaintiff for fraudulent misrepresentation, fraud by silence, fraudulent inducement, and negligent misrepresentation.

This matter is presently before the Court on motions to dismiss filed by Greystone (Doc. # 20), Goldberg Kohn (Doc. # 14), and plaintiff (Doc. # 25); a motion for judgment on the pleadings filed by the Titan defendants (Doc. # 27); and a motion for leave to conduct jurisdictional discovery filed by Greystone (Doc. # 41). The motions to dismiss by Greystone and Goldberg Kohn are **denied**, based on the Court's conclusions that it may exercise personal jurisdiction over those defendants and that plaintiff has sufficiently pleaded his conspiracy claim against Greystone. Greystone's discovery motion is also **denied**. Plaintiff's motion to dismiss Titan's counterclaims is **denied**, based on the Court's conclusion that Titan has sufficiently pleaded its claims against plaintiffs, including with respect to the particularity requirement of Rule 9(b). Finally, the Titan defendants' motion for judgment on the pleadings on plaintiff's tort claims is **granted in part and denied in part**. Plaintiff's claim for negligent misrepresentation is dismissed to the extent based on representations concerning

promises of future action, and plaintiff's claim for punitive damages is also dismissed to the extent based on his claim for negligent misrepresentation. The Court also concludes that plaintiff has not adequately pleaded his reliance on post-agreement representations, his reasonable diligence as an element of his claims for fraud by silence, the existence of an agreement among the Titan defendants in support of his conspiracy claim, and the details of most of the alleged misrepresentations as required by Rule 9(b); those claims are therefore subject to dismissal, although plaintiff is granted leave to amend his complaint by **December 11, 2009**, to cure those pleading deficiencies.

## I.    **Greystone's Motions**

Greystone moves to dismiss the claims against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Greystone also seeks leave to conduct jurisdictional discovery prior to the Court's ruling on its motion to dismiss. In addition, Greystone moves to dismiss plaintiff's conspiracy claim pursuant to Fed. R. Civ. P. 12(b)(6), on the basis that plaintiff has failed to allege sufficient facts concerning the existence of an agreement among the alleged conspirators to support a plausible conspiracy claim.

### A.    *Personal Jurisdiction Standards*

Although a plaintiff bears the burden of establishing personal jurisdiction over a defendant, *see OMI Holdings, Inc. v. Royal Ins. Co.,* 149 F.3d 1086, 1091 (10th Cir. 1998), in the preliminary stages of litigation this burden is "light." *Intercon, Inc. v. Bell*

*Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995)). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction "is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *See id.* The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *Id*. Moreover, if the parties present conflicting affidavits, "all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* Only the well pled facts of plaintiff's complaint, however, as distinguished from mere conclusory allegations, must be accepted as true. *Id.* In addition, an affidavit submitted by a party must comply with the requirements of Fed. R. Civ. P. 56(e), i.e., it must be based on personal knowledge, set forth admissible facts, and show affirmatively that the affiant is competent to testify to the matters stated therein. *See FDIC v. Oaklawn Apts.*, 959 F.2d 170, 175 n.6 (10th Cir. 1992).

To obtain personal jurisdiction over a nonresident defendant in a diversity action, "a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process." *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). Because Kansas's long-arm statute permits the exercise of any jurisdiction that is consistent with

the United States Constitution, the personal jurisdiction inquiry under Kansas law collapses into the single due process inquiry. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998).

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant so long as the defendant purposefully established "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *accord Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). This standard may be met in two ways. First, a court may exercise specific jurisdiction if a defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Intercon*, 205 F.3d at 1247 (quoting *Burger King Corp*., 471 U.S. at 472); *accord Doering v. Copper Mountain, Inc*., 259 F.3d 1202, 1210 (10th Cir. 2001). Second, a court may exercise general jurisdiction if the defendant's contacts with the forum state, while unrelated to the alleged activities upon which the claims are based, are nonetheless "continuous and systematic." *Intercon*, 205 F.3d at 1247 ("When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state."); *accord Doering*, 259 F.3d at 1210.

Even if a defendant's actions created sufficient minimum contacts, the court must still consider whether the exercise of personal jurisdiction "would offend traditional notions of 'fair play and substantial justice.'" *Intercon*, 205 F.3d at 1247 (quoting *Burger King Corp.*, 471 U.S. at 476). This inquiry requires a determination of whether the "exercise of personal jurisdiction over [the] defendant is reasonable in light of the circumstances surrounding the case." *Id.* (citing *Burger King Corp.*, 471 U.S. at 477-78); *accord Peay*, 205 F.3d at 1212.

B.      *Jurisdiction Analysis*

Greystone, a limited liability company formed in Delaware with its headquarters in New York, argues that plaintiff has not shown that it had sufficient contacts with Kansas to support personal jurisdiction in this case. According to its affidavit, Greystone does not conduct business and does not have any property or employees in Kansas. Greystone concedes that it sent two employees to Kansas on one occasion to conduct due diligence for a possible loan to Titan for the purchase of Crescent, that it hired an appraiser who performed work in Kansas for that due diligence work, that it received due diligence documents sent from Kansas, and that it directed a very small number of documents and communications into Kansas. Greystone argues, however, that such contacts are not sufficient to confer specific jurisdiction in this case.

The Court disagrees with Greystone that it did not have sufficient minimum contacts with Kansas in connection with plaintiff's claims. According to the

uncontroverted allegations of the complaint and the facts properly submitted by plaintiff

through the affidavit of an officer of Crescent, Greystone had the following contacts with

Kansas in connection with plaintiff's transaction with Titan, which the Court deems

sufficient to establish personal jurisdiction over Greystone: Greystone and Goldberg

Kohn (as Greystone's agent[1]) monitored the negotiations for the purchase of Crescent

and the preparation of the stock purchase agreement, and was aware made aware of the

terms of the purchase. Greystone and Goldberg Kohn requested and received documents

from Kansas in the course of their due diligence work, and they requested the creation

of an on-line depository for the review of documents located in Kansas. Employees of

Greystone visited Kansas on at least one occasion, viewed assets in Kansas, met with

plaintiff, and discussed the contemplated transaction and Greystone's financing of the

---

[1]Greystone does not dispute that Goldberg Kohn acted as its agent. Nor does Greystone dispute that Goldberg Kohn's contacts with Kansas in connection with these claims may be attributed to Greystone for purposes of personal jurisdiction. *See, e.g.*, *Cory v. Aztec Steel Building, Inc.*, 2005 WL 1799207, at *4 (D. Kan. Apr. 5, 2005) ("An agent's contacts with the forum state may be imputed to a nonresident corporation for long-arm jurisdiction.") (citing *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 458-59 (10th Cir. 1996)), *aff'd*, 468 F.3d 1226 (10th Cir. 2006); K.S.A. § 60-308(b)(1) (Kansas long-arm statute confers jurisdiction over any nonresident who "in person or through an agent or instrumentality" does any of the enumerated acts). Instead, Greystone merely argues that Goldberg Kohn's contacts are not sufficient in themselves, as shown by Goldberg Kohn's own motion to dismiss. Whether or not Goldberg Kohn's contacts would be sufficient by themselves to confer jurisdiction, the Court considers the contacts of both Greystone and Goldberg Kohn as its agent in determining whether Greystone's contacts are sufficient. Moreover, even if Goldberg Kohn's contacts were not attributed to Greystone, the Court would nonetheless conclude that Greystone's own contacts are sufficient to confer jurisdiction over it.

transaction. Employees of Greystone and Goldberg Kohn made frequent inquiries to Crescent's employees in Kansas concerning the details of the business of Crescent and the documents provided by Crescent. Employees of Greystone and Goldberg Kohn engaged in e-mail and other communications with Crescent's employees in Kansas. Greystone and Goldberg Kohn engaged appraisers, inspectors, and title companies to perform due diligence work in Kansas. Greystone and Goldberg Kohn were closely involved in the transaction and controlled the flow and details of closing documents for the transaction. Goldberg Kohn agreed to accept delivery of stock certificates to hold in escrow for purposes of the closing on the transaction to purchase Crescent, a Kansas company, and Goldberg Kohn refused to return one certificate to Crescent.

The Court also rejects Greystone's argument that its conduct was not purposefully directed at Kansas, the forum state. All of the cited conduct related directly to the purchase of a company located in Kansas, and Greystone directed communications and due diligence activities into Kansas to facilitate its own business as a lender to Titan for the purchase of Crescent. According to plaintiff's facts, which must be credited at this time, Greystone was closely involved in the entire transaction. Greystone's contacts with Kansas were certainly not random or fortuitous or unilaterally created by other parties.

Greystone further asserts that plaintiff's claims did not arise out of these contacts with Kansas as required for the exercise of specific jurisdiction. Greystone notes that plaintiff's claims against it relate only to the conversion of the stock certificate, and it

argues that its contacts prior to the execution of the purchase agreement are therefore unrelated to those claims. The Court does not agree, however, that the alleged conversion can be so easily segregated in this manner. As alleged by plaintiff, the wrongful acts by defendants were all interrelated. Greystone was closely involved in the entire transaction, and the alleged conversion of the stock certificate occurred in connection with the closing of that transaction. Greystone allegedly conspired to effect that conversion, which was facilitated by misrepresentations by the other defendants. Greystone allegedly had knowledge that its financing was a part of the contemplated transaction, and the lack of financing contributed to plaintiff's assertion that his ownership interest was therefore converted. Accordingly, the Court concludes that Greystone's contacts with Kansas are sufficiently linked to plaintiff's claims against it.

Finally, the Court rejects Greystone's argument that this Court's exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. Greystone has not shown that the burden on Greystone in litigating in this forum would be so unreasonable as to offend due process.

### C. Sufficiency of Conspiracy Allegations

In addition, plaintiff argues that the contacts with Kansas of the other defendants, who are alleged co-conspirators, may also be attributed to Greystone for purposes of personal jurisdiction. Greystone does not take issue with that general statement of the law. *See Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007) ("The existence

of a conspiracy and acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction."). Nor does Greystone dispute that the Titan defendants' contacts with Kansas would be sufficient to confer specific jurisdiction over Greystone.

Greystone's only argument against such attribution of contacts in this case is that plaintiff has not provided or pleaded sufficient facts to support the allegation of the existence of an agreement between Greystone and the other defendants. "In order for personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than 'bare allegations' that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy." *Id.*; *accord American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 (10th Cir. 1983) (quoting *Baldridge v. McPike, Inc.*, 466 F.2d 65, 68 (10th Cir. 1972)); *see also Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987) (in support of jurisdiction, only well-pled facts, as distinguished from mere conclusory allegations, must be accepted as true). In addition, the Supreme Court recently confirmed that merely conclusory allegations are not entitled to the presumption of truth at the pleading stage and are not sufficient to state a claim for relief; rather, the plaintiff must plead facts in sufficient detail to establish a plausible right to relief. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)). Applying these standards in the context of an antitrust claim,

the Supreme Court held that a plaintiff may not merely allege the existence of a conspiracy, but must plead sufficient factual matter to suggest that an agreement was actually made. *See Twombly*, 550 U.S. at 556-57. There is no reason to believe that these same standards should not also govern a plaintiff's allegations in support of jurisdiction. *See, e.g.*, *Watkins v. Kajima Int'l*, 2009 WL 3053856, at *6 (M.D. Tenn. Sept. 18, 2009) (pleading deficient under *Twombly* did not provide minimum contacts necessary to support the assertion of personal jurisdiction).

Greystone argues that plaintiff has only conclusorily alleged the existence of an agreement involving Greystone, without supporting facts to give rise to a plausible conspiracy claim. The Court concludes, however, that plaintiff has sufficiently pleaded facts to support a plausible assertion of a conspiracy involving Greystone. According to plaintiff's uncontroverted allegations and its affidavit, Greystone had an existing business relationship with Titan, and principals of the two companies were personal friends; throughout the relevant period, Greystone and its attorneys were closely involved in the transaction, which contemplated Greystone's financing and acquisition of a significant liability of Crescent's; Greystone did not provide financing or eliminate the debt; Greystone and its attorneys nonetheless wrongly refused to return the stock certificate made out to Titan; and Greystone actively participated in the looting of another company purchased by Titan with Greystone's financing, which conduct injured plaintiff and facilitated the overall scheme to defraud plaintiff. Thus, plaintiff has not

11

merely attempted to tie an otherwise innocent and uninvolved party to the scheme through a conclusory allegation that a conspiracy existed; rather, plaintiff has specifically alleged wrongful conduct by Greystone, and the totality of the allegations give rise to a plausible inference that a conspiracy existed involving Greystone.

Greystone has not provided any other reason why its co-conspirators' contacts with Kansas should not be considered by the Court in evaluating Greystone's contacts with Kansas. Accordingly, the Court concludes that the exercise of specific jurisdiction over Greystone is further supported by consideration of the Titan defendants' contacts with Kansas. The Court denies Greystone's motion to dismiss plaintiff's claims for lack of personal jurisdiction.

Moreover, because plaintiff has adequately pleaded the existence of a conspiracy, the Court denies Greystone's motion to dismiss the conspiracy count for failure to state a claim.

### D.  *Motion for Leave to Conduct Jurisdictional Discovery*

The Court also denies Greystone's motion for leave to conduct jurisdictional discovery prior to the Court's ruling on its motion to dismiss.[2]  This is not a case in which a plaintiff needs discovery in order to find contacts with the forum state to support jurisdiction over the defendant. In this case, even if Greystone could discover additional

---

[2]In a telephone hearing, the Court previously denied this motion to the extent that Greystone requested a stay of the briefing on its jurisdiction motion.

facts to controvert the affidavit submitted by plaintiff, that affidavit would still be credited over Greystone's own affidavits at this stage of the litigation. Greystone has not cited any authority that would require that a defendant be given leave to conduct jurisdictional discovery. Moreover, Greystone will not suffer any substantial prejudice like that suffered by a plaintiff whose claim is barred by an adverse jurisdictional ruling, as Greystone may still challenge the Court's exercise of personal jurisdiction over it after discovery in the normal course. For these reasons, the Court denies Greystone's discovery motion.

## II.    Goldberg Kohn's Motion to Dismiss

Goldberg Kohn moves to dismiss plaintiff's claims against it (conversion, conspiracy, breach of fiduciary duty) for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Goldberg Kohn, a law firm located in Chicago, Illinois, acted as Greystone's attorneys in conducting due diligence concerning possible financing by Greystone of Titan's purchase of Crescent. Goldberg Kohn argues that its employees never visited Kansas as a part of that work and that it directed only a small number of communications into Kansas in performing due diligence; thus, Goldberg Kohn argues that it did not have minimum contacts with Kansas sufficient to support the exercise of specific jurisdiction over it.[3]

---

[3]The Court rejects plaintiff's assertion of general jurisdiction over Goldberg Kohn
(continued...)

The Court disagrees, however, and it concludes, based on the same contacts by Goldberg Kohn listed above with respect to Greystone's motion, *see supra* Part I.B, that Goldberg Kohn had sufficient contacts with Kansas to support personal jurisdiction over it consistent with due process. Moreover for the same reasons stated with respect to Greystone, the Court concludes that Goldberg Kohn's contacts with Kansas are sufficiently related to plaintiff's claims against it, and that plaintiff's allegations concerning the existence of a conspiracy involving Goldberg Kohn are sufficient to support attribution of the other defendants' contacts to Goldberg Kohn for this analysis. Moreover, Goldberg Kohn, a law firm that advertises a national law practice, has not shown that this Court's exercise of jurisdiction over it in this forum would be so burdensome and unreasonable as to violate due process. The Court denies Goldberg Kohn's motion to dismiss based on a lack of personal jurisdiction.

### III.    Titan Defendants' Motion for Judgment on the Pleadings

The Titan defendants seek judgment on the pleadings pursuant to Fed. R. Civ.

---

[3](...continued)
based on the firm's pro hac vice appearances in five cases in this district in the last five years. Plaintiff has not provided any evidence of the extent of Goldberg Kohn's contacts with the state in those cases; thus, plaintiff has not established that Goldberg Kohn's contacts with Kansas have been systematic and continuous, as required for the Court's exercise of general jurisdiction.

12(c) with respect to plaintiff's tort claims under Kansas law.[4]

### A.    Governing Standards

A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same standard that applies to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *See Park Univ. Enterprises, Inc. v. American Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006).  The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do.  *See Bell Atlantic*, 550 U.S. at 555.  The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).  Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative

---

[4]The parties have analyzed the tort claims brought by plaintiff and Titan under Kansas law; accordingly, the Court will also apply Kansas law to those claims.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (forum state's choice-of-law rules determine which state's substantive law applies); *Ling v. Jan's Liquors*, 237 Kan. 629, 634-35, 703 P.2d 731, 735 (1985) (in Kansas, tort claims are governed by the law of the state in which the tort occurred).

level." *Bell Atlantic*, 550 U.S. at 555. The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B. Fraud and Negligent Misrepresentation Claims Generally

The Titan defendants raise a number of arguments in seeking judgment on plaintiff's claims for fraudulent misrepresentation, fraud by silence, fraudulent inducement, and negligent misrepresentation.

### 1. STATEMENTS OF OPINION OR OPTIMISM

Defendants argue first that particular alleged misrepresentations are not actionable because they represent mere statements of opinion or corporate optimism concerning future events. *See Timi v. Prescott State Bank*, 220 Kan. 377, 389, 553 P.2d 315, 325 (1976) ("To constitute actionable fraud the representation must relate to past or present fact, as opposed to mere opinions or puffing or promised action in the future.") (citation omitted). Defendants challenge plaintiff's claims based on alleged representations that defendants had a long history of past successes; that Titan was the perfect entity to purchase Crescent; that Titan would provide a platform for continued expansion by Crescent; that Titan's previous acquisition of another distributor would provide synergy for future growth, and that Titan wanted to merge the two distributors; that renewable

16

energy was the next "dot-com"; and that the company would be successful in the future.[5]

First, the Court notes that the alleged misrepresentations concerning defendants' financial prowess and history of success state present facts and do not relate to future action; thus, plaintiff's claims based on those representations are not precluded on this basis. With respect to the remaining statements, the Court concludes that plaintiff's claims are not subject to dismissal at this time. The general rule in Kansas that statements of opinion are not actionable is subject to exceptions. As the Kansas Supreme Court has stated: "The rule is tempered by the fact all statements must be considered in the context of the circumstances under which they are made and where the terms of dealing are not equal, and the representor has superior knowledge of the subject, a statement which would otherwise be one of opinion will be regarded as one of fact." *Fisher v. Mr. Harold's Hair Lab, Inc.*, 215 Kan. 515, 523, 527 P.2d 1026, 1033 (1974) (citations omitted); *see also Goff v. American Sav. Ass'n of Kan.*, 1 Kan. App. 2d 75, 79, 561 P.2d 897, 901 (1977) ("Many factors must be considered in determining whether a statement is a matter of fact or matter of opinion and whether or not a plaintiff has a right to rely on the statement."). Plaintiff has alleged in his complaint that the Titan defendants superior knowledge and were in a position of superiority over plaintiff.

---

[5]In its actual substantive counts, plaintiff alleged that defendants "[p]articularly, but without exclusion," made certain enumerated misrepresentations. Thus, in their motion, defendants targeted representations made both in the counts and elsewhere in the complaint. In this argument, defendants cite representations alleged in subparagraphs 100(a), (e), and (h), and paragraphs 25-31, 45, and 62 of the complaint.

Defendants have not suggested or argued that the alleged statements of opinion could not satisfy this exception as a matter of law. Accordingly, the Court rejects this basis for dismissal of any of plaintiff's claims.

## 2. PROMISES OF FUTURE ACTION

The Titan defendants next attack plaintiff's claims based on an alleged misrepresentation that defendants would retain plaintiff to run Crescent. Because this alleged fraud relates to a promise concerning future events, plaintiff must eventually prove not merely a breach of that promise, but a misrepresentation of defendant's present intent to perform at the time of the promise. *See Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 78, 596 P.2d 816, 824 (1979). Defendants argue that plaintiff has not pleaded sufficient facts to support a plausible claim that defendants had a present intention not to retain plaintiff, particularly in light of the fact (as noted in plaintiff's complaint) that plaintiff was not terminated until March 31, 2009, well after execution of the purchase agreement and nearly two months after Crescent declared bankruptcy.

The Court rejects this argument. Plaintiff has pleaded specific facts in support of his allegations that defendants made numerous misrepresentations to him, schemed to induce him into entering into the agreement, failed to reduce Crescent's debt as promised, conspired to deprive him of his ownership interest, looted another company to the detriment of Crescent, and planned to ruin Crescent. A reasonable jury could

plausibly infer from these facts, if proven, that defendants did not intend to keep plaintiff for more than a short time after the purchase of Crescent.[6] The Court denies this portion of the Titan defendants' motion to dismiss.

### 3. DUPLICATIVE OF CONTRACT CLAIM

Defendants next seek dismissal of plaintiff's claims based on alleged statements that plaintiff would be paid cash and Titan stock and be released from personal guaranties in exchange for his interest in Crescent; that Greystone or Titan would pay down a particular loan to Crescent; and that Greystone had committed to providing funding to take out that loan. Defendants argue that such statements are not actionable because they conflict with provisions of the purchase agreement and are thus duplicative of plaintiff's contract claim.[7]

Kansas law is not as restrictive with respect to this issue as defendants suggest. "[W]hen the same conduct could satisfy the elements of both a breach of contract or of an independent tort, unless the conduct is permitted by the express provisions of a contract, a plaintiff may pursue both remedies." *Bittel v. Farm Credit Servs. of Cent.*

---

[6]The case cited by defendants, *Whitten v. Farmland Indus.*, 759 F. Supp. 1522 (D. Kan. 1991), was decided on summary judgment; the fact that plaintiff failed to produce evidence to support a present intent to deceive in that case does bear on whether plaintiff failed to plead a plausible claim in this case.

[7]Both plaintiff and Titan have referred to the stock purchase agreement, a copy of which plaintiff provided to the Court. In deciding a motion on the pleadings, the Court may refer to an indisputably authentic copy of a document that is cited in the complaint and central to the parties' claims. *See MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002).

*Kan.*, 265 Kan. 651, 660, 962 P.2d 491, 498 (1998). More recently, in *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 77 P.3d 130 (2003), the Kansas Supreme Court again rejected an argument that tort claims were subsumed into a contract claim because they were based on the same conduct. *See id.* at 413-15, 77 P.3d at 145-46. In allowing the tort claims, the *Burcham* court noted that the duties that the plaintiff attempted to impose were not those bargained for in the contract and were not negated in the contract. *See id.* at 414-15, 77 P.3d at 146.

Similarly, in the present case the agreement did not expressly permit the alleged conduct by defendants (failing to reduce or eliminate the loan and guaranties, failing to provide financing), and the terms of the agreement were not coextensive with the scope of the alleged misrepresentations. For instance, section 2.1 of the agreement (cited by defendants) states the purchase price (cash and Titan stock), but does not address plaintiff's guaranties. Defendants note that section 2.2(b) provides that Titan may arrange for bridge financing; however, that provision does not negate the representation that Titan or Greystone would in fact acquire the loan. Section 2.2(c)'s promise that plaintiff's guaranty would be reduced to a certain amount does not preclude a further promise that the guaranty would be extinguished. The Court rejects this basis for dismissal of some of plaintiff's claims.

4.     RELIANCE ON POST-AGREEMENT STATEMENTS

In paragraphs 58 through 60 of the complaint, plaintiff alleges that defendants

made certain misrepresentations relating to "another scheme" devised after December 1, 2008. The Titan defendants argue, as a matter of law, that plaintiff cannot have relied to his detriment on such representations because they occurred after the execution of the stock purchase agreement and because, as alleged by plaintiff, any money raised in reliance on those statements was ultimately returned.[8]

Plaintiff does not allege that he relied on defendants' misrepresentations only by entering into the agreement. In the substantive counts of the complaint, plaintiff alleges that representations were material to his decision to execute the agreement "and make thousands of dollars in payments from Crescent to the Defendants." In his brief, plaintiff asserts that he did rely on post-agreement misrepresentations, but he does not identify any such actions taken in reliance. In light of plaintiff's own allegation that money raised in reliance on these representations was returned, the Court agrees with defendants that plaintiff has not pleaded a plausible claim that he relied to his detriment on the post-agreement misrepresentations identified in paragraphs 58 through 60 of the complaint.

Accordingly, plaintiff's claims based on those representations are subject to dismissal. It is not clear that plaintiff could not allege a plausible claim, however. Therefore the Court grants plaintiff leave, until December 11, 2009, to amend his

---

[8]The Titan defendants seek the dismissal of claims based on the representations alleged in subparagraphs 100(c), (d), and (f) of the complaint on this basis. It is not clear, however, that plaintiff intended to limit those allegations to the representations alleged in paragraphs 58 through 60. Thus, the Court considers only the allegations contained in paragraphs 58 through 60.

complaint to make clear his detrimental reliance on any post-agreement representations by defendants.[9]

### C. Negligent Misrepresentation

#### 1. PROMISES OF FUTURE ACTION

The Titan defendants assert that plaintiff may not maintain a claim for negligent misrepresentation based on certain alleged statements (alleged in subparagraphs 109(a), (b), (c), (e), and (g) of the complaint) that constitute promises of actions in the future. It is true that, under Kansas law, a person cannot negligently misrepresent a present intent to perform in the future. *See Bittel*, 265 Kan. at 665, 962 P.2d at 501, *quoted in Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 221-22, 4 P.3d 1149, 1167 (2000).

The Court concludes that the representations alleged in subparagraphs 109(a) and 109(e)—that Titan would provide a platform for Crescent's continued expansion and that Titan's acquisition of the other distributor would provide synergy—are actually statements of opinion and do not constitute representations of a present intent to take certain action in the future. Thus, plaintiff's claim based on those alleged representations are not subject to dismissal on this basis.

Plaintiff argues that the other statements relate to the existing fact that Titan has

---

[9]The Titan defendants' argument that the Court should deny plaintiff's request for an opportunity to amend, which plaintiff made without an accompanying motion or proposed amendment, is hardly persuasive in light of defendants' similarly "cursory" request to amend if necessary in response to plaintiff's motion to dismiss the counterclaims.

the financial wherewithal to complete the transaction. The Court disagrees. The statements alleged in subparagraphs 109(b), (c), and (g)—that Near would receive certain compensation, that Greystone or Titan would pay down the Crescent loan, that Titan would continue to employ plaintiff—clearly represent promises of future action. Therefore, the Titan defendants are awarded judgment on plaintiff's negligent misrepresentation claim to the extent based on those alleged statements.

## 2. PUNITIVE DAMAGES

Defendants seek judgment on plaintiff's claim for punitive damages based on the underlying tort of negligent misrepresentation. As defendants note, Kansas courts have not permitted the recovery of punitive damages for negligent misrepresentation. *See Johnson v. Geer Real Estate Co.*, 239 Kan. 324, 329, 720 P.2d 660, 664 (1986) (reversing award of punitive damages based on negligent misrepresentation); *Sheldon v. Vermonty*, 53 F. Supp. 2d 1157, 1169 (D. Kan. 1999) (citing *Johnson* in ruling that punitive damages are unavailable with respect to a claim for negligent misrepresentation), *aff'd in part and rev'd in part on other grounds*, 246 F.3d 682 (10th Cir. 2000). Accordingly, defendants' motion is granted with respect to this claim.[10]

### D. *Fraud by Silence*

To establish fraud by silence under Kansas law, plaintiff must show, among other

---

[10]Although plaintiff alleged willful and wanton conduct in his fraud counts, he did not do so in his negligent misrepresentation count.

things, that defendants "had knowledge of material facts which plaintiff did not have and which plaintiff could not have discovered by the exercise of reasonable diligence." *See Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman*, 267 Kan. 245, 260, 978 P.2d 922, 932 (1999). The Titan defendants assert that they are entitled to judgment on plaintiff's fraud by silence claim because plaintiff failed to plead that he could not have discovered the allegedly concealed facts through the use of reasonable diligence.[11] In his response, plaintiff does not address whether this element must be pleaded in the complaint.

Under Fed. R. Civ. P. 9(b), fraud must be pleaded with particularity. That rule is often applied more liberally to fraud by silence claims because it may be difficult to identify exactly when, where, and by whom a representation should have been made. *See Capital Solutions, LLC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 2009 WL 1635894, at *6 (D. Kan. June 11, 2009). The Court concludes, however, that a plaintiff should allege with particularity any "facts that would have prevented it from knowing [the concealed fact] and must also allege that its ignorance was not the result of its own lack of diligence," as such facts should be known to the plaintiff. *See Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 746 F. Supp. 1051, 1056 (D. Kan. 1990); *see*

---

[11]The Court rejects defendants' alternative argument that plaintiff cannot satisfy this element in light of plaintiff's citation in his complaint to publicly-available documents containing the allegedly concealed facts (relating to troubles experienced by Mr. Crivello). The Court cannot say as a matter of law that a reasonably diligent person would have discovered these documents.

*also Evans v. Pearson Enters.*, 434 F.3d 839, 851 (6th Cir. 2006) (affirming dismissal of fraudulent concealment claim based on plaintiff's failure to plead her exercise of due diligence).

Plaintiff did not make any allegations relating to his satisfaction of the due diligence element. Accordingly, plaintiff's fraud by silence claim is subject to dismissal. The Court grants plaintiff leave, however, to amend his complaint by December 11, 2009, to cure this pleading deficiency.

### E.   Conversion

### 1.   INTANGIBLE RIGHTS

The Titan defendants seek judgment on plaintiffs' claim that they converted plaintiff's right of ownership in Crescent. In his complaint, plaintiff alleged that Goldberg Kohn failed to return to him a stock certificate issued by Crescent to Titan. Defendants argue that plaintiff cannot maintain a claim for conversion based on the retention of a certificate issued to Titan and not on the retention of a certificate issued to plaintiff (which would show plaintiff's right of ownership).

"Conversion is the unauthorized assumption of right of ownership over personal property belonging to another." *Farrell v. General Motors Corp.*, 249 Kan. 231, 245, 815 P.2d 538, 548 (1991) (emphasis deleted). The Kansas Supreme Court has noted that "[a]n action will not lie for conversion of a mere debt or chose in action." *Temmen v. Kent-Brown Chevrolet Co.*, 227 Kan. 45, 50, 605 P.2d 95, 99 (1980) (quoting 18 Am.

Jur. 2d *Conversion* § 10). Although the Kansas Supreme Court has not addressed the conversion of intangible rights, the Kansas Court of Appeals has done so in two published cases. *See Farmers State Bank v. FFP Operating Partners, L.P.*, 23 Kan. App. 2d 712, 714-14, 935 P.2d 233, 235-36 (1997); *Farm Bur. Mut. Ins. Co. v. Carmody*, 32 Kan. App. 2d 754, 759-61, 88 P.3d 1250, 1254-55 (2004).

In *FFP*, the court of appeals rejected the argument "that only tangible personal property is subject to conversion," and it held that a perfected security interest in personal property represented a form of property and could therefore be converted. *See FFP*, 23 Kan. App. 2d at 714-15, 935 P.2d at 235-36. The court thus affirmed a verdict against a defendant who converted a bank's security interest in inventory by selling and discarding that inventory. *See id.* In *Carmody*, a PIP insurer claimed that an attorney converted its interest in PIP settlement proceeds, created by statutory lien, by distributing the proceeds to other parties. *See Carmody*, 32 Kan. App. 2d at 759-61, 88 P.3d at 1254-55. The court did not hold or suggest that intangible rights may not be converted as a general rule. Rather, the court noted that the lien statute did not create an immediate ownership interest, but required additional steps for the creation of a lien; and that the statute provided for subrogation only to a certain extent, which amount had not yet been determined in the present case. *See id.* at 760-61, 88 P.3d at 1255. Accordingly, the court held that the insurer's statutory lien "was an inchoate, intangible 'property', the exact amount of which was unknown and which was not amenable to conversion." *See*

*id.* at 761, 88 P.3d at 1255. Together, the two cases demonstrate that, under Kansas law, intangible property rights may be subject to conversion, so long as there exists a present property interest. *See also, e.g.*, *IBD, Inc. v. Enterprise Bus. Solutions, LLC*, 2009 WL 929072, at *4-6 (Kan. Ct. App. Apr. 3, 2009) (unpub. op.) (rejecting appeal on conversion instruction, thereby permitting verdict for conversion of intangible property such as customer lists and software).

Defendants rely on an unpublished opinion by the court of appeals in *Moeller v. Kain*, 2008 WL 4416042 (Kan. Ct. App. Sept. 26, 2008) (unpub. op.). In *Moeller*, the court cited *FFP* in noting that intangible personal property may be the subject of conversion claim, but it added the following:

> In order to be subject to a claim for conversion, however, the intangible property must be merged with tangible property capable of being converted, *i.e.*, a document. *See* Restatement (Second) of Torts § 242, comment (1965); 18 Am. Jur. 2d *Conversion* § 7, p.159.

*Id.* at * 5. Defendants argue that the document allegedly kept from plaintiff here—the stock certificate issue to Titan—did not evidence *plaintiff's* right of ownership in Crescent, and thus there is no merged document that was converted. The Restatement section cited by *Moeller*, however, disposes of defendants' argument. Section 242 provides:

> (1) Where there is conversion of a document in which intangible rights are merged, the damages include the value of such rights.

> (2) One who effectively prevents the exercise of intangible rights of the kind customarily merged in a document is subject to liability similar to

27

that for conversion, even though the document is not itself converted.

Restatement (Second) of Torts § 242; *see also id.* illus. 2 (corporation that refuses to register a transfer of stock on its books is subject to liability, similar to that for conversion, for interfering with the transferee's rights as a stockholder). Similarly, the legal encyclopedia cited in *Moeller* states that "an action may be maintained for the conversion of corporate stock, even for unissued stock certificates." 18 Am. Jur. 2d *Conversion* § 12 (footnotes omitted). Thus, the authorities on which the *Moeller* court relied indicate that a plaintiff may maintain a claim, similar to a conversion claim, for interference with intangible rights, such as the right of ownership in a company, even if the particular document evidencing that right has not been converted.

Kansas courts have routinely followed the Restatement's provisions concerning the tort of conversion. *See, e.g.*, *Scholfield Bros. v. State Farm Mut. Auto. Ins. Co.*, 242 Kan. 848, 850, 752 P.2d 661, 663 (1988) (citing Restatement (Second) of Torts § 222A); *Snider v. MidFirst Bank*, 42 Kan. App. 2d 265, 275, 211 P.3d 179, 186 (2009) (quoting Restatement § 228). As noted above, the Kansas Supreme Court has cited the conversion chapter of Am. Jur. 2d with approval. *See Temmen*, 227 Kan. at 50, 605 P.2d at 99 (quoting 18 Am. Jur. 2d *Conversion* § 10). Moreover, in *FPP* the court of appeals allowed a claim for the conversion of intangible rights (a security interest) without the conversion of the actual document evidencing those rights. *See FFP*, 23 Kan. App. 2d at 714-15, 935 P.2d at 235-36. Therefore, the Court concludes that the Kansas Supreme

Court would recognize a claim for liability, similar to that for conversion, for the interference with the exercise of the intangible rights of ownership in a company, even without conversion of the particular certificate evidencing the plaintiff's ownership rights. Accordingly, defendants' motion for judgment on the claims designated as "conversion" claims by plaintiff is denied.

## 2. DUPLICATIVE OF CONTRACT CLAIM

The Titan defendants also assert that plaintiff's conversion claim improperly duplicates his contract claim, but they do not explain how the claims are duplicative. Defendants have not shown that the stock purchase agreement expressly allows for the retention of the stock certificate in these circumstances; therefore, plaintiff may maintain both his tort and contract claims. *See supra* Part III.B.3.[12] The Court also rejects defendants' argument that the retention of the stock certificate and the interference with plaintiff's ownership rights represents a mere debt to plaintiff that may not be converted. The Court denies defendants' motion for judgment on this basis.

### F. Conspiracy

Plaintiff has alleged a claim against all defendants for conspiracy to effect the conversion of his ownership rights in Crescent. The Titan defendants seek judgment on that claim on the basis that plaintiff has failed to plead sufficient facts to support a

---

[12]Because the purchase agreement here did not expressly govern the return of the stock certificate to plaintiff, the case of *Regal Ware, Inc. v. Vita Craft Corp.*, 2006 WL 6346879 (D. Kan. Sept. 19, 2006), cited by defendants, is inapposite.

plausible claim that an agreement existed between and among the alleged conspirators, as required by the United States Supreme Court's decisions in *Bell Atlantic* and *Iqbal*.[13]

The Court agrees that plaintiff's pleading is deficient in this regard. The complaint contains only conclusory allegations that all defendants generally agreed among themselves. Plaintiff insists that his complaint includes specific, detailed factual allegations about defendants' schemes to wrong him. Those facts relate to what defendants may have done in furtherance of the agreement, however, and do not support the existence of the agreement itself.

Plaintiff has alleged the general positions held by Messrs. Crivello, Marks, and Chance in relation to Titan, but he has not included any facts to distinguish their actions regarding plaintiff and Crescent. For instance, as noted below, plaintiff has generally not alleged which individuals made which alleged misrepresentations. *See infra* Part III.G. Thus, there is no factual basis for the Court or a jury to conclude that an actual agreement existed among these individuals, as opposed to action by any one of them on behalf of Titan or action by Titan generally. The conspiracy involving Greystone and Goldberg Kohn is distinguishable. As explained above, *see supra* Parts I.C, II, those two defendants have not been tied into the conspiracy merely through potentially innocent conduct and a conclusory claim of an agreement; rather, plaintiff alleged specific

---

[13]Because the Court rejected defendants' arguments for judgment on plaintiff's conversion claim, it also rejects defendants' argument that the conspiracy claim does not rest on a valid underlying tort claim.

wrongful conduct by those defendants, which supports a plausible inference that they were acting in concert with the other defendants who were perpetrating wrongs against plaintiff. With respect to the individuals, however, plaintiff has not provided facts that could raise the inference that each individual was not innocently attempting to transact business for Titan, but had agreed with the others to injure plaintiff. Plaintiff may not create that required inference by the mere allegation that an agreement did exist.

Accordingly, plaintiff's conspiracy claim against the Titan defendants is subject to dismissal. The Court grants plaintiff leave, however, until December 11, 2009, to amend his complaint to attempt to allege sufficient facts to support his claim that a conspiracy existed.

### G. *Pleading with Particularity Under Rule 9(b)*

Finally, the Titan defendants argue that plaintiff's fraud and misrepresentation claims are subject to dismissal under Fed. R. Civ. P. 9(b), which provides that in alleging fraud, a party must state the circumstances constituting fraud with particularity. To comply with the rule, a complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *See Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006).

The Court agrees that plaintiff has generally failed to comply with Rule 9(b) in pleading his affirmative fraud claims. In a single paragraph of the complaint, paragraph 45, plaintiff alleges specific misrepresentations by Mr. Crivello at a meeting in Kansas

in September 2008; plaintiff's claim based on those representations is sufficiently pleaded. With respect to the remaining alleged misrepresentations, plaintiff has not identified which of the Titan defendants made the statement or when or where it was made. Tenth Circuit law clearly requires such particularity. Plaintiff's references to Kansas generally and a broad pre- and post-agreement time frame are insufficient. *See D&K Ventures, LLC v. MGC, LLC*, 2009 WL 1505539, at *7 (D. Kan. May 27, 2009) (finding insufficient particularity to the extent it was unclear which alleged misrepresentations preceded the parties' agreement, in light of the alleged reliance in executing the agreement). Nor may plaintiff simply allege misrepresentations by the Titan defendants generally without identifying the particular speaker. *See id.* (Rule 9(b) requires identification of particular corporate officers who made each alleged oral misrepresentation).

Accordingly, plaintiff's affirmative misrepresentation claims are subject to dismissal under Rule 9(b), with the exception of the representations alleged in paragraph 45 of the complaint. Plaintiff is granted leave to amend his complaint, by December 11, 2009, to comply with Rule 9(b).[14]

---

[14]Because plaintiff's negligent misrepresentation claim refers back to the same factual allegations of fraudulent misrepresentations by defendants, plaintiff will necessarily elaborate on the bases for the former claim in amending the latter. Accordingly, the Court need not determine whether Rule 9(b) applies to negligent misrepresentation claims. *See Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (although Rule 9(b) does not apply to negligent misrepresentation claims by its terms, court applies the rule where the fraud and (continued...)

Defendants have not responded to plaintiff's argument that he has sufficiently pleaded the details of his claim for fraud by silence. In light of the relaxed standard for such a claim under Rule 9(b), *see supra* Part III.D, the Court rejects this basis for dismissal as it relates to the fraud by silence claim. As set forth above, however, the claim does not fully comply with Rule 9(b) because plaintiff has failed to include any allegations relating to the due diligence element (although plaintiff may amend to cure that deficiency). *See supra* Part III.D.

## IV.   **Plaintiff's Motion to Dismiss Counterclaims**

### A.   *Pleading with Particularity Under Rule 9(b)*

Titan has brought counterclaims against plaintiff for fraudulent misrepresentation, fraud by silence, fraudulent inducement, and negligent misrepresentation. Titan alleges that plaintiff misrepresented that various accounts receivable held by Crescent were valid, when if fact plaintiff had entered into secret agreements with those debtors relieving them of the debts. Plaintiff moves to dismiss Titan's claims on the basis that they have not been pleaded with particularity as required by Rule 9(b).

The Court rejects this basis for dismissal and concludes that Titan has met the requirements of Rule 9(b). Titan's pleading properly includes the maker of the alleged

---

[14](...continued) negligent misrepresentations claims are based on the same set of alleged facts); *D&K Ventures*, 2009 WL 1505539, at *8 (declining to resolve question where claims were based on same alleged misrepresentations).

misrepresentations (plaintiff, orally and in financial documents for which he vouched); their dates and locations (at meetings in Independence, Kansas, in late July 2008, on August 6 and 7, 2008, and on September 11 and 12, 2008, involving specific persons); their content (various accounts receivable were valid); why they were fraudulent (plaintiff's secret agreements with the debtor); and Titan's action in reliance (entering into the stock purchase agreement with plaintiff and Crescent).[15]

The Court does not agree with plaintiff that Titan's pleading had to include details about the date, location, and participants of the secret meetings in which plaintiff allegedly forgave various receivables. Tenth Circuit law clearly provides that Rule 9(b) requires that the pleading "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof"—thus, the pleading must give details about the *representation*. *See Tal*, 453 F.3d at 1263. Titan was not required to plead every fact that supports its claim of fraud. *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1253 (10th Cir. 1997) (Rule 9(b) does not require detailed evidentiary matter).

---

[15]Plaintiff notes Titan's allegation that it questioned Near about accounts receivable entries at the September meeting in Independence "as well as on other occasions." In its response, Titan appears to limit that reference to the particular meetings identified by date in the counterclaims. In light of that explanation, Titan's claims are limited to representations made at the meetings that occurred in late-July, August 6 and 7, and September 11 and 12 of 2008. The Court rejects plaintiff's argument that Titan has somehow abandoned its claims based on representations made at the meetings in July and August.

Plaintiff also cites Titan's allegation that plaintiff "and others at Crescent at his direction provided financial and accounting information and documentation at Titan," and he argues that the reference to "others at Crescent" is too vague under Rule 9(b). The Court rejects this argument as well. Titan alleged that it acted in reliance on the financial information and documentation that plaintiff provided and for which plaintiff vouched. Thus, Titan is alleging that plaintiff himself made the representations contained in the documents. Titan was not required to identify the particular persons who actually handed over the documents.

The Court concludes that Titan's counterclaims are not deficient under Rule 9(b), and the Court therefore denies that portion of plaintiff's motion to dismiss.

> B.  *Failure to State a Claim Under Rule 12(b)(6)*

> 1.  DISAVOWAL OF REPRESENTATIONS

Plaintiff also argues that Titan's counterclaims should be dismissed for failure to state a claim under Rule 12(b)(6). Plaintiff first argues as a matter of law that in the parties' stock purchase agreement he disavowed or disclaimed any prior representations concerning financial matters. *See Flight Concepts Ltd. Partnership v. Boeing Co.*, 38 F.3d 1152, 1157 (10th Cir. 1994) (citing Kansas cases) (under Kansas law, oral promises made during contract negotiations cannot be construed as fraudulent if they are directly contradicted by the written agreement). Plaintiff relies on section 4.8(iv) of the agreement. Section 4.8 states that plaintiff will deliver certain financial statements to

Titan that are true, correct and complete; and further provides, notwithstanding that promise, as follows:

> (iv) [plaintiff] and [Titan] acknowledge and agree that given the facts and circumstances under which this acquisition is made, substantial restatement and adjustment of the Financial Statements are likely to be made to account for fair value in a purchase type transaction, with associated write down of impaired assets and increase in reserves and contingencies, and [plaintiff] has no technical knowledge, and makes no affirmative representations or warranties, as to the consequences of such restatement and adjustments.

The Court concludes that Titan's claim is not foreclosed by this contractual provision as a matter of law. The provision clearly states that particular adjustments to the financial statements are likely, and that plaintiff makes no representations as to the consequences of those adjustments. Thus, contrary to plaintiff's argument, this provision does *not* include a disclaimer of all representations by plaintiff relating to financial documents or financial matters concerning Crescent. Plaintiff is not entitled to dismissal of Titan's counterclaims on this basis.

## 2. CAUSATION

Finally, plaintiff argues that Titan cannot have relied on the alleged misrepresentations by plaintiff as a matter of law. Plaintiff notes that, according to the counterclaims, Titan already knew, prior to the transaction, that Crescent was facing bankruptcy and in a "dire situation" financially; thus, plaintiff argues that Titan cannot have been harmed by any failure to reveal negative financial information in entering into the agreement. This argument is without merit, as the true financial condition of

Crescent—how dire things really were—could certainly have affected Titan's decision to purchase Crescent. Therefore Titan has adequately stated a claim that it was injured by plaintiff's fraud and misrepresentations concerning the accounts receivable.

Plaintiff also argues as a matter of law that Titan cannot have been harmed by secret agreements between plaintiff and various debtors executed in November 2008, after the execution of the stock purchase agreement. The Court rejects this argument as well. Titan has clearly alleged that plaintiff misrepresented the validity of the accounts receivable prior to the execution of the purchase agreement, and it pleaded the subsequent written agreements with the debtors as evidentiary facts supporting that claim. Titan's counterclaims are not precluded on this basis as a matter of law, and the Court denies plaintiff's motion to dismiss in its entirety.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion to dismiss (Doc. # 20) and the motion for leave to conduct jurisdictional discovery (Doc. # 41) filed by defendant Greystone Business Credit, LLC are **denied**.

IT IS FURTHER ORDERED THAT the motion to dismiss filed by defendant Goldberg Kohn Bell Black Rosenbloom & Moritz, Ltd. (Doc. # 14) is **denied**.

IT IS FURTHER ORDERED THAT the motion for judgment on the pleadings

filed by defendants Titan Global Holdings, Inc., Frank Crivello, David Marks, and Bryan Chance (Doc. # 27) is **granted in part and denied in part**, as set forth herein. Plaintiff is granted until **December 11, 2009**, in cure his pleading deficiencies by filing an amended complaint.

IT IS FURTHER ORDERED THAT plaintiff's motion to dismiss the counterclaims (Doc. # 25) is **denied**.

IT IS SO ORDERED.

Dated this 25th day of November, 2009, in Kansas City, Kansas.

s/ John W. Lungstrum

_____
John W. Lungstrum
United States District Judge